# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #059

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **6th day of December, 2017**, are as follows:

**BY WEIMER, J.**:

2017-CA-0596      LEE RAND, ET AL. v. CITY OF NEW ORLEANS (Parish of Orleans)

This litigation was brought as a challenge to the City's administrative review procedures, including the right to appeal an adverse administrative decision, arising from citations based on traffic camera images. The plaintiffs in this case have never challenged the initial justification for the City to impose liability based on the use of traffic cameras. Simply put, the plaintiffs did not seek to thwart the City's issuance of citations based on traffic cameras, but rather sought to avoid liability for the citations based on plaintiffs' theory that the administrative review process denied the plaintiffs due process and access to the courts. However, under de novo review of the record, we observed that the administrative review procedures of which plaintiffs complained were amended by the City. Moreover, the relevant citations were dismissed. Essentially having achieved what they set out to accomplish in their lawsuit, Plaintiffs had no justiciable interest in this matter, rendering their claims moot. Moreover, no exception to mootness applies. Consequently, we reverse the declaration of unconstitutionality issued by the district court and dismiss this matter with prejudice.
REVERSED; DISMISSED WITH PREJUDICE AS MOOT.

JOHNSON, C.J., additionally concurs and assigns reasons.
HUGHES, J., dissents with reasons.

# SUPREME COURT OF LOUISIANA

## NO. 2017-CA-0596

## LEE RAND, ET AL.

## VERSUS

## CITY OF NEW ORLEANS

*ON APPEAL FROM THE CIVIL JUDICIAL DISTRICT COURT
FOR THE PARISH OF ORLEANS*

**WEIMER**, Justice.

This matter arises from a challenge to the validity of a municipal ordinance whereby citations, which are based on traffic camera images, may be reviewed at an administrative hearing. The case is before us on direct appeal from a district court judgment declaring that the administrative review process, as it existed during 2008 through 2012, was unconstitutional. More particularly, the district court declared the administrative review process violated the due process and access to court provisions of the Louisiana Constitution.

After reviewing the record, we determine that this case has been rendered moot. While the record reveals a convoluted development of this case, what emerges from the trial record is that this case resulted in a number of changes, both legislative and practical, to the administrative review process. Although this case is technically moot, the end result is that the plaintiffs have achieved vindication of the constitutional rights for which they advocated. Accordingly, and for the reasons

discussed herein, we vacate the judgment of the district court and dismiss the matter with prejudice.

## FACTS AND PROCEDURAL HISTORY

In 2007, the City of New Orleans (the "City") enacted ordinances, codified as Sections 154-1701 through 154-1704 of its Code of Ordinances, which created the Automated Traffic Enforcement System ("ATES"). Pursuant to ATES, traffic cameras located at various points in the City gather images of vehicles when certain violations, such as speeding or running red lights, allegedly occur. By its express terms, ATES declares it is not a criminal law enforcement regime, as "[t]he imposition of a civil penalty under [ATES] shall not be considered a criminal conviction." New Orleans, La., Code of Ordinances, § 154-1704 (2017).

Plaintiffs Edmond Harris and Lee Rand received notices of alleged ATES violations from the City. In their July 1, 2011 petition, the plaintiffs claim the administrative review process violated their constitutional rights to due process under La. Const. art. I, § 2 and their access to courts under Article I, § 22.[1] In their petition, the plaintiffs sought injunctive relief directing the "City to terminate all attempts at hearings until the City corrects the process."

Following a hearing, the district court granted a preliminary injunction "enjoining, prohibiting, and restraining" the City "from conducting any administrative hearings authorized by the [ATES] ordinance." The district court stayed the injunction, however, pending review by the court of appeal. See **Rand v. City of New Orleans**, 2012-0348, p. 3 (La.App. 4 Cir. 12/13/12), 125 So.3d 476, 479. The

---

[1] La. Const. art. I, § 2 provides: "No person shall be deprived of life, liberty, or property, except by due process of law." La. Const. art. I, § 22 provides: "All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."

court of appeal found no abuse of discretion by the trial court's issuance of a preliminary injunction. The court of appeal explained: "The record demonstrates that the hearing officers occupy two inconsistent positions, one as the prosecutor and one as the adjudicator, which violates the right to due process." *Id.*, 2012-0348 at 8, 125 So.3d at 482.

The City sought this court's discretionary review of the court of appeal's decision, which was denied. **Rand v. City of New Orleans**, 13-0119 (La. 3/1/13), 108 So.3d 1178.

Seeking to capitalize on these determinations, plaintiffs filed a motion for summary judgment and prayed for the issuance of a permanent injunction against the administrative review process. The district court agreed, "[d]eclaring the process of hearing unconstitutional and violative of the State Constitution Declaration of Rights article," and "[o]rdering the City to terminate all attempts at hearings until the City corrects the process." The district court additionally declared "that all hearings held between February 2008 and [the date of its ruling were] in violation of the State Constitution."

The City appealed the permanent injunction. **Rand v. City of New Orleans**, 14-2506 (La. 6/30/15), 173 So.3d 1148. On that occasion, this court agreed with the City, finding that a permanent injunction could not issue on the same evidence plaintiffs had submitted for the preliminary injunction, plaintiffs having supplied no further evidence. *Id.*, 14-2506, pp. 4-5, 173 So.3d at 1151. Accordingly, this court reversed the permanent injunction, and "reinstate[d] the preliminary injunction prohibiting the City from undertaking any hearings based on this ordinance, and remand[ed] the matter to the trial court for further proceedings." *Id.*, 14-2506 at 6, 173 So.3d at 1152.

3

On remand, plaintiffs filed a "Motion to Set for Trial on the Merits," seeking to set the matter for a non-jury trial on the merits. The matter proceeded to a one-day bench trial on September 27, 2016.[2] Four witnesses testified at the trial: Lee Rand (one of the plaintiffs), Elman Harris (another plaintiff), Richard Bozeman (adjudication administrator of the traffic camera program) and Thomas Lee (a hearing officer for the program).

At trial, the plaintiffs sought to establish that they had been denied meaningful access to a court for review of an adverse administrative hearing decision because the next level of review was to civil district court, where the filing fee exceeded $400. Although Mr. Bozeman, the ATES administrator, acknowledged that the appeal procedure to the district cost "more than the amount of the ticket," he also testified that the appeals provision of the ATES ordinance had been amended. Pursuant to Code of Ordinances, § 154-1702(h)(1), as amended, appeals from adverse hearing decisions are no longer made to civil district court, but to traffic court. As provided by Code of Ordinances, § 154-1702(h)(2), "[t]he traffic court may require a reasonable fee not to exceed $50.00, from any person or persons lodging any such appeal with the traffic court."

The plaintiffs also sought to establish that an intake form, ostensibly requiring a person desiring an administrative review hearing to acknowledge that the person was the owner or operator of a vehicle caught on camera, essentially operated as an admission of plaintiffs' liability for a citation. On both direct and cross-examination, however, plaintiffs established that they had paid nothing for the citations, as the citations they had received were all dismissed by the City.

_____

[2] Other named plaintiffs did not appear for the trial, apparently having abandoned their claims. See La. C.C.P. art. 1672.

4

Additionally, the plaintiffs attempted to show bias in favor of the City by the hearing officers who conduct administrative reviews. The crux of this effort was an attempt to show some connection between upholding citations and the hearing officers' financial compensation. The uncontroverted testimony, however, was that no relationship existed between the number of citations upheld and any hearing officer's compensation.

The plaintiffs also contended that it was improper for the hearing officers to both obtain the camera evidence from the computer system and to then review the merits of the citation. According to the plaintiffs, this situation was akin to the hearing officer acting as a prosecutor on the City's behalf. However, Mr. Bozeman testified that hearing procedures had been changed in 2012 after the issuance of the preliminary injunction. Mr. Bozeman described the 2012 change in hearing procedure, "where there then was a City Attorney who presented the City's case relative to the photo safety citations, a prosecutor, if you will, so to speak." Mr. Bozeman's testimony on this point was uncontroverted.

Before describing the details of the district court's judgment, it should be noted that, in our earlier opinion, this court observed: "We note in passing that the District Court's judgment granting the permanent injunction also granted plaintiffs declaratory relief even though declaratory relief was not specifically requested by the plaintiffs. On remand, the parties may amend their petition to seek declaratory relief, if appropriate." **Rand**, 14-2506 at 6 n.10, 173 So.3d at 1152 n.10. However, without an amendment of the pleadings, after remand and a trial on the merits, the district court granted only declaratory relief. The court's November 10, 2016 judgment provided:

It is ORDERED, ADJUDGED AND DECREED that due to failure of the City of New Orleans to create a fair process by which traffic camera citation recipients could contest and defend against the tickets they received, the ATES Ordinance, and the processes created pursuant to the ordinance between February 2008 and 2012, constituted a violation of the Louisiana State constitution Article I Section 2, and Section 22, and the Home Rule Charter Chapter 2 Section 2-202 of the City of New Orleans.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all hearings held pursuant to the traffic camera citations from February of 2008 to November 2011 were conducted in violation of the Louisiana Constitution and the City of New Orleans' Home Rule Charter.

The district court stated in written reasons for judgment:

An applicant is in effect denied an appeal due to the cost. Rather than selecting Traffic Court as the appellate court, the ordinance mandates an appeal to the Civil District Court. This appeal would cost the driver a $450.00 filing fee. If the driver were to prevail in Civil District Court, they would not be required to pay a ticket that typically costs between $40.00-$200.00. This Court finds that this prohibitive cost to appeal violates the driver's access to courts as guaranteed in The Louisiana Constitution and the City's Home Rule Charter.

This Court also finds that the City's process requiring that the ticket holder admit that they were the driver or owner of the vehicle prior to the hearing violates all notion[s] of due process of law. So does the hearing officer acting in the dual role as prosecutor. Further, the video that the hearing officer/prosecutor enters into evidence have never been properly identified or authenticated.

The City now directly appeals to this court.[3]

## LAW AND DISCUSSION

This court conducts *de novo* review of judgments declaring legislation to be unconstitutional. **Louisiana Federation of Teachers v. State**, 14-0691, p. 13 (La. 10/15/14), 171 So.3d 835, 845. "[P]rinciples for the determination of the

---

[3] This court has jurisdiction over this appeal pursuant to La. Const. art. V, §5(D) because the district court declared that the ATES review procedures violate the Louisiana Constitution. For completeness of analysis, although the district court also declared that the ATES review procedures violate the City's Charter, Chapter 2 Section 2-202, we note that by its express terms, Section 2-202 "shall not create any enforceable rights, duties, obligations or causes of action under this Charter beyond those guaranteed by the Constitution of the United States or the Constitution of the State of Louisiana." Accordingly, our analysis in this case is confined to whether the plaintiffs carried their burden to prove the ATES review procedures violate the Louisiana Constitution.

constitutionality of a legislative enactment are equally applicable to the ordinance at issue here." **City of Baton Rouge/Parish of East Baton Rouge v. Myers**, 13-2011, 13-2036, p. 5 (La. 5/7/14), 145 So.3d 320, 327. Relatedly, "a court interprets a municipal or City ordinance using the same guidelines as those used in construing a statute." **Born v. City of Slidell**, 15-0136, p. 13 (La. 10/14/15), 180 So.3d 1227, 1235. "An ordinance, like a state statute, is presumed to be constitutional." **Myers**, 13-2011 at 4-5, 145 So.3d at 327. "[W]hoever attacks the constitutionality of an ordinance bears the burden of proving his allegation." **Id.**, 13-2011 at 5, 145 So.2d at 327.

Our review of this matter is also guided by the long-settled principle that "courts will not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies." **LaPointe v. Vermilion Parish School**, 15-0432, p. 9 (La. 6/30/15), 173 So.3d 1152, 1159. Indeed, whether a case is moot is both a "threshold issue," (**id.**) and an issue which this court may notice on its own. See La. C.C.P. art. 927 ("[T]he failure to disclose a cause of action or a right or interest in the plaintiff to institute the suit … may be noticed by either the trial or appellate court on its own motion.").

With those predicate principles in mind, we turn to the subject of this appeal, which is the district court's judgment. It is first necessary to ascertain the judgment's effect. As mentioned earlier, this court previously reversed the district court's imposition of a permanent injunction against the City's administrative review process and reinstated a preliminary injunction. The present judgment, which is undisputedly a final judgment, describes no injunctive relief. However, the plaintiff's petition prayed for a permanent injunction, and there is no indication in the record that plaintiffs' prayer for injunctive relief was ever retracted. Because the district court's

7

judgment is silent on the relief requested, *i.e.*, a permanent injunction against the City conducting administrative review processes, that request for an injunction is deemed denied. See **Sun Finance Co., Inc. v. Jackson**, 525 So.2d 532, 533 (La. 1988) ("It is true as a general rule that where a judgment is silent with respect to any demand which was an issue in the case under the pleadings such silence constitutes an absolute rejection of such demand.").

Relatedly, because a preliminary injunction is an intermediate step in a procedure to secure a final injunction, the district court's rendition of a final judgment that does not include a permanent injunction effectively vacates the earlier, preliminary injunction granted in plaintiffs' favor. See La. C.C.P. art. 862 ("[A] final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief."); see also **Rand**, 14-2506 at 4, 173 So.3d at 1151 (quoting **Mary Moe, L.L.C. v. Louisiana Bd. of Ethics**, 03-2220, pp. 9-10 (La.4/14/04), 875 So.2d 22, 29) ("The issuance of a permanent injunction takes place only after a trial on the merits in which the burden of proof is a preponderance of the evidence, but a preliminary injunction may be issued on merely a *prima facie* showing by the plaintiff that he is entitled to relief.").

Although injunctive relief is absent, what the judgment does purport to accomplish is to declare that the City's administrative review procedure for ATES traffic camera violations is unconstitutional, and "that all hearings held pursuant to the traffic camera citations from February of 2008 to November 2011" are likewise unconstitutional.

The time frame addressed by the district court's declaration is important. At the time this lawsuit was filed in 2011, Code of Ordinances, § 154-1702(h) provided:

"A person or persons aggrieved by the City's decision may file a petition for judicial review in the Orleans Parish Civil District Court."[4] No mention was made in the version of § 154-1702(h) in effect in 2011 of the filing fees involved in filing an appeal in Orleans Parish Civil District Court. Even so, testimony at trial established that, as a practical matter, the filing fees cost "more than the amount of the ticket."

However, as was established during trial, and is a matter of public record, the City significantly amended the ATES ordinance after the plaintiffs received their ATES citations and filed their petition. Pursuant to Code of Ordinances, § 154-1702(h)(1), as amended, appeals from adverse hearing decisions are no longer made to civil district court, but to traffic court. Moreover, under § 154-1702(h)(2), as amended, the filing fees to appeal to traffic court are capped, as follows: "The traffic court may require a reasonable fee not to exceed fifty dollars ($50), from any person or persons lodging any such appeal with the traffic court to defray the cost of record preparation, transcription of evidence, and other related costs of the appeal." The ATES appeal to Orleans Parish Civil District Court, and the attending fee in that court, formed the primary bases for plaintiffs' complaint that the ATES procedures violated the guarantee of access to courts under La. Const. art. I, § 22. As just noted, however, those provisions of the ATES ordinance have been amended, and favorably so as those provisions relate to the plaintiffs' petition. The City essentially delivered the appeals procedures the plaintiffs sought. As we have previously ruled:

> When the challenged article, statute, or ordinance has been amended or expired, mootness may result if the change corrects or cures the condition complained of or fully satisfies the claim. Further, if it is concluded that the new legislation was specifically intended to resolve the questions raised by the controversy, a court may find that the case or controversy is moot. In such a case, there is no longer an actual

---

[4] This version of §154-1702(h) is recorded as Calendar No. 26,366 on the City Hall Calendar (February 1, 2007) (returned by the mayor as approved on February 22, 2007).

controversy for the court to address, and any judicial adjudication on the matter would be an impermissible advisory opinion.

**Cat's Meow, Inc. v. City of New Orleans, Dept. of Finance**, 98-0601, p. 9 (La. 10/20/98), 720 So.2d 1186, 1194.

The fact of the City's amendments to § 154-1702(h) does not, however, require that we find this case is moot. As we explained in **Cat's Meow**, "the defendant must show with assurance that there is *no reasonable expectation* that the alleged violation will recur." **Cat's Meow**, 98-0601 at 9-10, 720 So.2d at 1194 (emphasis added). In our review of the record, we find the defendant City has made such a showing. The amendments to § 154-1702 adding sections (h)(1) (appeal to traffic court) and (h)(2) (filing fees not to exceed $50) have been left in place over five years. Additionally, the City made additional, subsequent amendments to the ATES ordinances, but left sections (h)(1) and (h)(2) untouched.[5] Indeed, the amendments adding sections (h)(1) and (h)(2) have been the governing law longer than the original provisions of which plaintiffs complained. Thus, we find that there is "no reasonable expectation" that the City would "reenact the previous scheme" in a way that would justify this court presently adjudicating the constitutionality of an appellate scheme which was replaced long ago. The "mere assertion" of the possibility "that the City could again, at any time, enact legislation" akin to the "previous scheme" was "not persuas[ive]" for this court in **Cat's Meow**, nor is it persuasive under the ATES ordinance's history found in this record. We therefore conclude that the plaintiffs' attack on the appellate procedure as violating their constitutional right to access to the court is moot (and was moot when tried).

---

[5] The versions of the relevant ATES ordinances discussed in this opinion were admitted into the trial record as Joint Exhibit 1.

The district court's reasons for judgment also indicated: "This Court also finds that the City's process requiring that the ticket holder admit that they were the driver or owner of the vehicle prior to the hearing violates all notion of due process of law." However, an appeal lies from the judgment itself, and not from the reasons for judgment.[6] The plaintiffs, moreover, made a single evidentiary offering regarding an alleged admission of liability. Specifically, a document captioned as an "Intake Form," admitted into evidence as Joint Exhibit 8, purports to require a person seeking an administrative review hearing to acknowledge being the owner and/or driver of the vehicle caught on camera. Even so, and recalling that our review is *de novo*, we note that Exhibit 8 cannot be a form applicable to the plaintiffs' alleged violations. Exhibit 8 indicates, near the bottom, that "APPEALS MUST BE FILED WITHIN 30 DAYS OF THE DECISION DATE AT THE NEW ORLEANS TRAFFIC COURT." The quoted language tracks the 2012 amendments we discussed earlier. Significantly, the plaintiffs admitted at trial that the citations of which they complained in the petition were dismissed prior to the 2012 amendments.[7] Thus, under *de novo* review, we find plaintiffs no longer had any justiciable interest because of the dismissal of their citations, which meant plaintiffs were no longer subjected to any monetary risk. Furthermore, although our prior jurisprudence counsels for openness to an exception

_____

[6] See La. C.C.P. art. 2082; see also **Greater New Orleans Expressway Com'n v. Olivier**, 02-2795, p. 3 (La.11/18/03), 860 So.2d 22, 24.

[7] Mr. Rand's and Mr. Harris' citations described in their petition were each dismissed by letters from the City dated September 13, 2011. At trial, Mr. Harris complained of additional citations not described in the petition. Mr. Harris testified, however, that he "believe[d] one or more of these tickets were administratively dismissed." The City's manager of its hearing center testified that he sent "a bunch" of dismissal letters at the direction of the City Attorney's Office, including letters to Mr. Harris and to Mr. Rand. There is no evidence of record that the City attempted to enforce the relevant citations after these dismissal letters. Therefore, under *de novo* review, we find that the dismissal of all relevant citations is sufficiently established in the record. We additionally note that no argument has been made that the City dismissed the citations in an effort to shield the ATES procedures from judicial scrutiny. Relatedly, the record establishes that the dismissals occurred before the preliminary injunction was issued on November 14, 2011.

of mootness, plaintiffs' introduction of an intake form applicable to some later time frame is not persuasive that we should find any exception to the mootness of their claims regarding the intake form. See **Cat's Meow**, 98-0601 at 9-10, 720 So.2d at 1194.

Finally, we note that the district court's declaration of unconstitutionality was based on a finding that hearing officers held dual roles (of representing the City and of being adjudicators), and that the evidence upon which the hearing officers relied was not authenticated. For the reasons just discussed, it has been established that due to the dismissal of their citations, this case is postured such that plaintiffs appear to lack a justiciable interest. The next analytical step is to ascertain whether an exception to mootness applies, such that we should nevertheless reach the merits of the issues of which plaintiffs complained. Under *de novo* review of the record, we have found that the City's administrative review procedures have significantly changed, as reflected in amendments to § 154-1702, and we have noted that plaintiffs introduced an intake form for a time period that is irrelevant to their citations. Moreover, the City established at trial that it effected numerous changes to its review procedures following the dismissal of the plaintiffs' claims, and these changes include the participation of a City attorney who advances the City's case. Therefore, we find that to opine on the constitutionality of the present procedures would be an exercise in speculative analysis because present procedures differ so greatly from the procedures as they existed when plaintiffs' citations were issued and that this is, thus, not a case where an exception to mootness may be found. See **Cat's Meow**, 98-0601 at 8, 720 So.2d at 1193 ("An issue is moot when a judgment or decree on that issue has been deprived of practical significance or made abstract or purely academic.") (quotations omitted).

12

In **Cat's Meow**, we also noted that curative changes to a challenged ordinance may offer an exception to mootness for "collateral consequences … when damages or other monetary relief has been claimed on account of former provisions of a challenged … ordinance." *Id.*, 98-0601 at 13, 720 So.2d at 1196. However, plaintiffs here did not seek and were not awarded monetary damages. What plaintiffs were awarded was a declaratory judgment, holding that the City's review procedures were unconstitutional. However, as we have explained, "[a] person can challenge the constitutionality of a statute only if the statute seriously affects his or her rights." **State v. Mercadel**, 03-2015, p. 8 (La. 5/25/04); 874 So.2d 829, 834 (quoting **Latour v. State**, 00-1176, p. 5 (La. 1/29/01), 778 So.2d 557, 560). The fact plaintiffs here were subject to possible monetary penalties for traffic citations at the time they filed their lawsuit does not vest plaintiffs with an everlasting ability to seek a declaratory judgment regarding the constitutionality of the citation review procedures. As we have further explained: "it is not enough that the requirements of justiciability are satisfied when the suit is initially filed: the requirements must remain throughout the course of litigation up to the moment of final disposition." **Cat's Meow**, 98-0601 at 9, 720 So.2d at 1193.[8]

In sum, given the City's numerous changes to its review procedures, when considered together and noting their longstanding existence, we are persuaded that this is not a case where the City has "creat[ed] a technical mootness as a sham to

---

[8] Because we have found that plaintiffs lacked a sufficiently justiciable interest by the time their claims were tried, we do not reach the merits of the City's argument that plaintiffs failed to sufficiently plead unconstitutionality based on alleged problems with authenticating the camera evidence. *Cf.* **Vallo v. Gayle Oil Co., Inc.**, 94-1238, p. 8 (La. 11/30/94), 646 So.2d 859, 864-65 (noting, as a "long-standing jurisprudential rule of law" that "the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized.").

13

deprive the court of jurisdiction." **Cat's Meow**, 98-0601 at 9, 720 So.2d at 1194.

Moreover, the record does not support finding an exception to the mootness.

## CONCLUSION

This litigation was brought as a challenge to the City's administrative review procedures, including the right to appeal an adverse administrative decision, arising from citations based on traffic camera images. The plaintiffs in this case have never challenged the initial justification for the City to impose liability based on the use of traffic cameras. Simply put, the plaintiffs did not seek to thwart the City's issuance of citations based on traffic cameras, but rather sought to avoid liability for the citations based on plaintiffs' theory that the administrative review process denied the plaintiffs due process and access to the courts. However, under *de novo* review of the record, we observed that the administrative review procedures of which plaintiffs complained were amended by the City. Moreover, the relevant citations were dismissed. Essentially having achieved what they set out to accomplish in their lawsuit, Plaintiffs had no justiciable interest in this matter, rendering their claims moot. Moreover, no exception to mootness applies. Consequently, we reverse the declaration of unconstitutionality issued by the district court and dismiss this matter with prejudice.

**REVERSED; DISMISSED WITH PREJUDICE AS MOOT.**

SUPREME COURT OF LOUISIANA

No. 2017-CA-0596

LEE RAND, ET AL.

VERSUS

CITY OF NEW ORLEANS

ON APPEAL
FROM THE CIVIL JUDICIAL DISTRICT COURT,
FOR THE PARISH OF ORLEANS

**JOHNSON, Chief Justice, additionally concurs and assigns reasons.**

I agree with the majority opinion that this matter is moot. I write separately to highlight the importance of this litigation.

From the inception of the City using traffic cameras with the purported purpose of maintaining safety on the roads, many New Orleans citizens saw the entire operation as collection of revenue for the City. Ultimately, the plaintiffs raised legitimate constitutional issues in challenging the system set up by the city.

Specifically, the plaintiffs challenged the Automated Traffic Enforcement Code of Ordinances, § 154-1701 through 1704, that required the citizen seeking review to complete a form admitting that they either owned or were driving the vehicle. Also, the plaintiffs challenged the role of the reviewing officer who acted as both adjudicator and city prosecutor. Lastly, they objected to the final option available to citizens to challenge a ticket - an appeal to the Civil District Court where filing fee was prohibitive, namely $400 - an amount greater than that due for the ticket issued.

1

Today, the Code of Ordinances as amended in 2011 rectifies all of the plaintiffs' grievances. The City has reformed the process to ensure citizens are granted the constitutional protections to which they are entitled. This challenge to the constitutionality of the administrative review process has resulted in a benefit for all citizens of New Orleans. Although we are dismissing this action as moot, the plaintiffs have essentially obtained the relief they sought when they initiated this litigation.

12/06/17

**SUPREME COURT OF LOUISIANA**

**No. 2017-CA-0596**

**LEE RAND, ET AL.**

**VS.**

**CITY OF NEW ORLEANS**

*ON APPEAL FROM THE CIVIL JUDICIAL DISTRICT COURT
FOR THE PARISH OF ORLEANS*

**HUGHES, J.**, dissents with reasons.

I respectfully dissent. The intake form, which reflects the ordinance itself, provides that the "owner or operator" is responsible for a violation, as was acknowledged at oral argument. I would find this to be an unconstitutional scenario likely to be repeated and therefore not moot.