HANS J. LILJEBERG, Judge.
| ..¡Plaintiffs appeal a summary judgment granted in favor of one of the defendants, QBE Specialty Insurance Company, dismissing them from this lawsuit. For the following reasons, we reverse.

FACTS AND PROCEDURAL HISTORY

This case arises from a motor vehicle accident that occurred on July 18, 2009, in St. Charles Parish. Knollie Jones was operating a 2006 Mack garbage truck on *473 Interstate 310 as it approached the Luling Bridge, when the garbage truck ran out of gas and came to a stop in the right-hand travel lane. Shortly thereafter, Misty Davis, who was operating a 2001 Honda CEV with her daughter, Naomi Davis, as a passenger, collided with the back of the garbage truck and sustained fatal injuries as a result of this collision.
In December of 2006, Ramelli Janitorial Services, Inc. (“Ramelli”) and RKC, L.L.C. (“RKC”), formerly named “Red K Contracting,” entered into a “subcontractor agreement” providing for RKC to “perform all work necessary for removal and disposal of residential trash.” Thereafter, in May of 2007, Ramelli entered into a contract with the City of Kenner to provide solid waste collection and disposal services. Ramelli and RKC agreed that RKC would perform the work provided for the City of Kenner contract. It is alleged that RKC was performing work pursuant to Ramelli’s contract with the City of Kenner at the time of the accident. RKC was the owner of the garbage truck involved in the accident and the employer of the driver, Mr. Jones.
Kenneth Davis, the surviving spouse of Misty Davis, filed suit for damages against several defendants, individually and on behalf of his minor daughter, | .(Naomi Davis. Barry Terrell also filed suit against several defendants on behalf of Hunter Terrell, who was the minor child of Mr. Terrell and Misty Davis. Hunter Terrell has now reached the age of majority and has been substituted as plaintiff. These two lawsuits were later consolidated.
Plaintiffs allege in their original, first supplemental, and second supplemental petitions that several defendants are liable for the damages sustained as a result of this accident, including RKC and Ramelli. The insurers of RKC and Ramelli, namely Scottsdale Insurance Company, RSUI Indemnity Company, and QBE Specialty Insurance Company (“QBE”), were also named as defendants.
On September 7, 2012, Ramelli filed a Motion for Summary Judgment, asserting that it is not liable for any damages in this case and seeking dismissal of plaintiffs’ claims against it. Ramelli contends that because it did not own the garbage truck or employ the driver or anyone responsible for maintaining the truck, it is entitled to judgment as a matter of law. Ramelli contends that Mr. Jones was employed by RKC, which was an independent subcontractor for the collection and disposal of residential and commercial solid waste. It asserts that the terms of the subcontractor agreement between Ramelli and RKC establish an independent contractor relationship. Ramelli claims that it never supervised, controlled, or directed any of RKC’s employees, including Knollie Jones. In support of its position, Ramelli submitted affidavits from the president of Ramelli, Robert Ramelli, and the president of RKC, David Starks, as well as other documents.
In opposition to Ramelli’s Motion for Summary Judgment, plaintiffs filed a memorandum asserting that there are genuine issues of material fact regarding the degree of control Ramelli retained and/or exercised over RKC work and employees, such as Mr. Jones. They note that the subcontractor agreement was entered into prior to the contract between the City of Kenner and Ramelli, and [ ¡¡that the subcontractor agreement does not contain language indicating that RKC was an independent contractor. Plaintiffs further note that the contract between the City of Kenner and Ramelli provides that Ramelli shall supervise and direct the garbage collection and disposal work provided for in the contract. Plaintiffs contend that although RKC employees were not direct employees of Ramelli, Ramelli maintained *474 control over the work, as it agreed to do in its contract with the City of Kenner. Thus, plaintiffs claim that the legal doctrines of vicarious liability and/or dual employee are applicable to this case, and that summary judgment in Ramelli’s favor is not warranted.
Also in September of 2012, QBE filed a motion for summary judgment, asserting that the QBE commercial auto coverage insurance policy issued to Ramelli does not provide insurance coverage to Ramelli for plaintiffs’ claims in this case. QBE notes that the policy it issued to Ramelli is not a general liability policy, but rather a commercial auto policy which only provides coverage for damages arising from an accident caused by Ramelli’s ownership, maintenance, or use of a “covered auto,” as defined and listed in the policy. QBE contends that because the garbage truck at issue was not owned by Ramelli and was not listed or designated as a “covered auto” under the terms of the policy, the policy does not provide coverage in the case and plaintiffs’ claims against it should be dismissed. QBE submitted the insurance policy and other documents in support of its motion.
Plaintiffs opposed QBE’s motion for summary judgment, asserting that although the QBE policy does not specifically list the garbage truck at issue as a “covered auto,” the garbage truck was in fact a “covered auto” pursuant to designation symbol 9 in the policy which provides coverage for vehicles not owned by Ramel-li but “used in connection with” Ramelli’s business. Plaintiffs argue that coverage applies in this case where it is undisputed that Ramelli did not |fiown the truck but the truck was clearly being used in connection with Ramelli’s business of waste disposal under its contract with the City of Kenner. Plaintiffs submitted several exhibits in support of their position, including the depositions of Robert Ramelli and David Starks.
The motions for summary judgment filed by both Ramelli and QBE came for hearing before the trial judge on October 25, 2012.[1] The motion for summary judgment filed by Ramelli was considered first. After counsel for each party argued their positions, the trial judge denied the motion, finding that there were genuine issues of material fact regarding the degree control Ramelli had over RKC’s employees and/or the work performed pursuant to Ramelli’s contract with the City of Kenner. The trial judge noted that the contract between Ramelli and the City of Kenner provided that Ramelli would control the work.[2] The trial judge further stated that she did not believe that Mr. Jones would have been “on the road” on the date of the accident if it were not for the contract between Ramelli and the City of Kenner.
After Ramelli’s motion for summary judgment was denied, the trial court considered the motion for summary judgment filed by QBE. After listening to the arguments of counsel and considering the mo *475 tion for summary judgment, memoranda, and the exhibits, which were admitted at the hearing, the trial judge found no coverage for plaintiffs’ claims under the terms of the QBE policy. The trial judge stated that she believed RKC was “doing business with the City of Kenner contract” at the time of the accident. However, she further stated that she |7found RKC and Ramelli to be two separate businesses and that the garbage truck was not being used for Ramelli’s business, but rather was being operated in connection with RKC’s business. The trial judge granted QBE’s motion for summary judgment, dismissed plaintiffs’ claims against QBE with prejudice, and designated the judgment as final and appealable. Plaintiffs appeal the summary judgment rendered in favor of QBE. LAW AND DISCUSSION
The issue in this appeal is whether the trial judge erred in finding that the garbage truck at issue was not a “covered auto” under the terms of the QBE policy and thus whether the summary judgment in favor of QBE was appropriate.
Appellate courts review motions for summary judgment de novo, asking the same questions as the trial court to determine whether summary judgment is appropriate. Champagne v. Ward, 03-3211, p. 4 (La.1/19/05), 893 So.2d 773, 776; Mag-non v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, 195. Specifically, an appellate court must determine whether any genuine issues of material fact exist and whether the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B)(2); Thompson v. McKnight, 01-190, p. 2 (La. App. 3 Cir. 6/6/01), 787 So.2d 620, 621, writ denied, 01-2882 (La.1/25/02), 807 So.2d 249. A fact is “material” if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of a legal dispute. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 751. In determining whether there are any genuine issues of material fact, courts cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. Daniel v. Blaine Kern Artists, Inc., 96-1348 (La.App. 4 Cir. 9/11/96), 681 So.2d 19, 20, writ denied, 96-2463 (La.12/6/96), 684 So.2d 934.
|sThe interpretation of an insurance policy is usually a legal question that can be properly resolved on a motion for summary judgment. Robinson v. Heard, 01-1697, p. 4 (La.2/26/02), 809 So.2d 943, 945. However, a summary judgment declaring lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence in support of the motion for summary judgment, under which coverage could be afforded. Adams v. Thomason, 32,728 (La.App. 2 Cir. 3/1/00), 753 So.2d 416, 420, wnt denied, 00-1221 (La.6/16/00), 764 So.2d 965.
An insurance policy is a contract between the parties and has the effect of law between them. Bryant v. United Services Auto. Ass’n., 03-3491, 04-28, p. 13 (La.9/9/04), 881 So.2d 1214, 1221; Dunn v. Potomac Ins. Co. of Illinois, 94-2202 (La. App. 1 Cir. 6/23/95), 657 So.2d 660, 663. The intent of the parties, as reflected by the words of the insurance policy, determines the extent of coverage. Louisiana Insur. Guar. Ass’n. v. Interstate Fire and Casualty Co., 93-911 (La.1/14/94), 630 So.2d 759, 763. When courts interpret insurance policies, they must determine the parties’ common intent to ensure that the interpretation of the insurance policy is not conducted in a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by the policy’s terms. Id.; Huggins v. Gerry Lane Enterprises, Inc., 06-2816, p. 3 *476 (La.5/22/07), 957 So.2d 127, 129. If the words of the insurance policy are clear and express the intent of the parties, the agreement must be enforced as written. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. Any ambiguity in the terms of the policy must be construed against the drafter and in favor of the insured. Id.
|aIn the present case on appeal, plaintiffs argue that the trial judge erred in granting QBE’s motion for summary judgment because the commercial auto insurance policy issued by QBE to Ramelli provided coverage for non-owned autos that were being used in connection with Ramelli’s business. Plaintiffs assert that the garbage truck involved in the accident was not owned by Ramelli but was clearly being used in connection with Ramelli’s business of “hauling garbage” at the time of the accident.
QBE responds that summary judgment was properly granted in its favor because the commercial auto policy naming Ramelli as the insured does not provide coverage under the facts of this case. QBE notes that the garbage truck was not listed as an insured vehicle in the policy and it was not owned or leased by Ramelli. They further contend that the garbage truck was performing RKC’s business only and was not being “used in connection with” Ramelli’s business.
Section II of the business auto coverage form in the commercial lines policy issued to Ramelli by QBE provides for liability coverage, in pertinent part, as follows:
A. Coverage
We will pay all sums an “insured” legally must pay as damages because of “bodily injury” or “property damage” to which this insurance applies, caused by an “accident” and resulting from the ownership, maintenance, or use of a covered “auto.”
In order for there to be coverage under the QBE policy for the accident in this case, the garbage truck owned by RKC must be a “covered auto” under the terms of the policy. Section I of the business auto coverage form, entitled “Covered Autos,” provides, in part, as follows:
Item Two of the Declarations shows the “autos” that are covered “autos” for each of your coverages. The following numerical symbols describe the “autos” that may be covered “autos.” The symbols entered next to 11fla coverage on the Declarations designate the only “autos” that are covered “autos.”
Just below the “Covered Autos” provision cited above, the insurance policy contains a list of numerical symbols, entitled, “Description of Covered Auto Designation Symbols,” which provides the definitions and/or descriptions of different coverages available to the insured. Under the terms of the QBE policy issued to Ramelli, designation symbols 7, 8, and 9 were selected and they define the autos that were “covered autos” under the policy.
Symbol 7 provides that the autos specifically listed in Item Three of the Declarations are covered autos. Symbol 8 provides that autos leased, hired, rented, or borrowed by Ramelli are covered autos, with some exceptions noted. Plaintiffs do not allege that there is coverage pursuant to symbols 7 or 8 in this case. Rather, the dispute in this matter is whether there is coverage under the policy pursuant to symbol 9, which provides coverage for non-owned autos as follows:
Non-Owned “Autos” Only — Only those “autos” you do not own, lease, hire, rent, or borrow that are used in connection with your business. This includes “autos” owned by your “employees,” partners (if you are a partnership), members (if you are a limited liability company), *477 or members of their households but only-while used in your business or your personal affairs.
The parties agree that Ramelli did not own the garbage truck involved in the accident. Accordingly, the issue to be resolved in order to determine coverage under the QBE policy is whether the garbage truck was being used in connection with Ramelli’s business.
When she granted QBE’s motion for summary judgment, the trial judge stated that she found the garbage truck was not being used in connection with Ramelli’s business, but rather it was being used for RKC’s business only. InHowever, we find that there are genuine issues of material fact that preclude such a finding at this stage of the litigation.
In his deposition, the president of Ra-melli, Robert Ramelli, admitted that when the accident occurred, the work being performed by the garbage truck and its driver was work pursuant to the contract between Ramelli and the City of Kenner. This contract specifically provides that Ra-melli shall supervise and direct the garbage collection and disposal work provided for in the contract. According to Mr. Ra-melli, Ramelli furnished some of the garbage trucks required for RKC to perform the job under Ramelli’s contract with the City of Kenner. Although RKC owned the garbage truck that was involved in the accident, the truck had the name “Ramelli Waste, L.L.C.” on the side of it.[3]
Just as the trial judge found issues of material fact regarding Ramelli’s liability in this matter, we find that there are genuine issues of material fact that are relevant to a determination of whether the garbage truck was “used in connection with” Ra-melli’s business and thus whether the QBE policy provides coverage if Ramelli is found liable in this matter. Accordingly, after our de novo review of the motion for summary judgment, opposition, memoran-da, and exhibits, we find that genuine issues of material fact preclude summary judgment in favor of QBE at this time, and we reverse this summary judgment. DECREE
For the forgoing reasons, we reverse the summary judgment that was granted in favor of QBE.

REVERSED

. RSUI Indemnity Company filed a motion for summary judgment which also came for hearing on October 25, 2012, and was subsequently denied. This motion for summary judgment is not at issue or pertinent to the present appeal.

. Ramelli filed a writ application with this Court seeking review of the denial of its motion for summary judgment. On January 16, 2013, this Court denied Ramelli's writ application. Noting that the trial court found genuine issues of material fact arising from the subcontractor agreement between Ramelli and RKC, as well as from the contract between Ramelli and the City of Kenner, this Court found no reason to disturb the trial court’s denial of the motion for summary judgment. Davis, et al. v. Scottsdale Insurance Company, et ah, 12-878 (La.App. 5 Cir. 1/16/13), (unpublished writ disposition).

. Although Ramelli Janitorial Services, Inc., defendant herein, and Ramelli Waste, L.L.C. are two separate entities, Robert Ramelli is the president of and owns 100% of both businesses. He testified in his deposition that "Ramelli Waste, L.L.C.” was put on the side of several garbage trucks utilized by RKC for advertisement purposes.